IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| RENAISSANCE RECOVERY SOLUTIONS, LLC; UNITED STATES FIRE INSURANCE COMPANY; and INTERSTATE FIRE AND CASUALTY COMPANY, | * * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | CV 114-102 |
| MONROE GUARANTY INSURANCE COMPANY and FCCI INSURANCE COMPANY, | * * * | |
| Defendants. | * * | |

**O R D E R**

Plaintiffs Renaissance Recovery Solutions, LLC ("RRS"), United States Fire Insurance Company ("U.S. Fire"), and Interstate Fire and Casualty Company ("Interstate") seek reimbursement from Defendants Monroe Guaranty Insurance Company ("Monroe") and FCCI Insurance Company ("FCCI") of costs to defend and pay claims arising out of a wrongful auto repossession that resulted in a fatality. Plaintiffs also seek penalties for insurance bad faith.[1]

## I.   FACTUAL BACKGROUND

The facts concerning the wrongful repossession and fatality

---

[1] The Court **DIRECTS** the Clerk of Court to remove the reference to third-party plaintiffs and defendants, a vestige of the state litigation.

are undisputed. (Docs. 40-3, 43-1.) Michael Brown, a tow truck driver, struck and killed William Jacobs, Jr., during an acrimonious repossession of a truck owned by Lidie Joseph Clements, a friend of Mr. Jacobs. Nuvell Nat'l Auto Fin., LLC v. Monroe Guar. Ins. Co., 736 S.E.2d 463, 465 (Ga. Ct. App. 2012). Mr. Clements agreed to a voluntary repossession, but Mr. Brown attempted the repossession earlier than agreed and before Mr. Clements could retrieve his belongings. Id. at 466.

In attempting to take the truck from the Clements' driveway, Mr. Brown repeatedly hit a van belonging to Pamela Jacobs, Mr. Jacobs' wife, who was visiting Mrs. Clements. Id. at 467. A verbal altercation ensued between Mr. Brown and Mmes. Jacobs and Clements, and eventually Messrs. Jacobs and Clements arrived and joined the altercation. Id. In the midst of the furor, Mr. Brown released Mr. Clements' truck from the hitch, swerved towards Messrs. Clements and Jacobs, hit Mr. Jacobs with the door of the tow truck, and ran over him with the tow truck's dual rear wheels. Id. The injuries to Mr. Jacobs were fatal. Id.

Mmes. Jacobs and Clements brought separate lawsuits in the Superior Court of Columbia County, Georgia. Mrs. Clements settled her claims for $450,000. A jury entered a verdict in favor of Mrs. Jacobs in the amount of $2,528,794.16, jointly and

2

severally against (1) Michael Brown, the driver, (2) Nuvell National Auto Finance, LLC ("Nuvell"), the repossessing lender, (3) RRS, a repossession management company with whom Nuvell contracted to perform the repossession, and (4) Renovo Services, LLC ("Renovo"), a repossession company with whom RRS subcontracted to perform the repossession. Id. at 463. Renovo, in turn, contracted with Mr. Brown to perform the repossession. Because the four defendants admitted liability prior to trial, the only question for the jury was the amount of damages. (See doc. 1-5.)

U.S. Fire, Renovo's primary insurer, defended Renovo and RRS in Clements and Jacobs. (See doc. 49-3, doc. 49-5, p. 9.) Monroe, the primary insurer of RRS, refused to defend the underlying cases and refused to indemnify RRS for the Clements settlement and Jacobs verdict. U.S. Fire exhausted its $1 million policy limit by paying the $450,000 Clements settlement and $550,000 of the Jacobs verdict. (Doc. 1-2, pp. 39-40.) Interstate, Renovo's excess insurer, paid the remaining balance of $1,978,794.16 on the Jacobs verdict. (Id.)

After trial in Jacobs, Monroe and RRS moved in the Superior Court of Columbia County for summary judgment on the issue of coverage under the commercial auto policy issued by Monroe to RRS. (See doc. 48-1, p. 48.) The Honorable Carl C.

Brown granted summary judgment to Monroe, finding the tow truck was not a covered "unowned auto" as defined in the Monroe policy and the tow truck was not used in connection with RRS' business. (Doc. 40-1, pp. 51-54.) Judge Brown also granted summary judgment to Monroe on the issue of whether Nuvell's liability, assumed by RRS through an indemnity agreement, was covered under the Monroe policy. RRS appealed, and the Georgia Court of Appeals reversed, holding the Monroe policy provided coverage to RRS for its own liability and for the liability of Nuvell that RRS assumed by operation of an indemnity agreement. Nuvell Nat'l Auto Fin., LLC, 736 S.E.2d at 468-70.

On February 11, 2014, more than a year after the case was remanded on appeal, Judge Brown granted RRS permission to add U.S. Fire and Interstate as third-party plaintiffs and FCCI as a third-party defendant. (See doc. 1, p. 2.) FCCI, upon being served the amended complaint, elected to remove the case to this Court under 28 U.S.C. § 1446(b) based on diversity of citizenship and filed a notice of removal, in conjunction with Monroe, on April 24, 2014. (Id.)

Monroe now concedes coverage consistent with the appellate decision. (Doc. 49-5, pp. 4-5.) Monroe and FCCI refuse to provide any reimbursement to U.S. Fire and Interstate for their satisfaction of the judgment in Jacobs based primarily on the

4

contention there can be no right of reimbursement between the *Jacobs* defendants in the absence of an apportionment of fault as contemplated by the Tort Reform Act of 2005, O.C.G.A. § 51-12-33. (See doc. 40-3, p. 6.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When seeking summary judgment, the movant must show that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail

at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### III.  **DISCUSSION**

### A.  Overview Of Summary Judgment Motions And Choice Of Law.

There are three summary judgment motions. Defendants' motion for partial summary judgment argues (1) procedural defects allegedly occurring in this coverage litigation before removal preclude recovery by Plaintiffs; (2) there is no duty to indemnify Plaintiffs for *Jacobs* because the joint and several verdict violates the Georgia fault apportionment scheme; (3) Defendants have not engaged in conduct constituting insurance bad faith under Michigan or Georgia law; and (4) there is no basis for an award of attorneys' fees under Georgia law. (See doc. 40-3.) In two motions, Plaintiffs seek summary judgment rulings that (1) Monroe owes its $1 million policy limit as its share of indemnification for *Clements* and *Jacobs*, and Monroe owes $199,024 as its share of defense costs; and (2) the FCCI policy provides indemnity coverage in excess of the Monroe policy. (See docs. 42-1, 43-1.)

It is best to begin the legal analysis with a choice of law overview. This Court applies federal procedural law and state substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). If the matter is substantive, the Court must examine Georgia law, including its choice-of-law rules, to ascertain the

applicable substantive law. Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co., 885 F.2d 826, 830 (11th Cir. 1989). Here, Georgia law obviously controls Defendants' argument that the *Jacobs* verdict is a nullity because it violates the Georgia fault apportionment scheme. See Mullins v. M.G.D. Graphics Sys. Grp., 867 F. Supp. 1578, 1580 (N.D. Ga. 1994) (applying Georgia rule of *lex loci delicti* that law of place of injury governs tort action).

Because delivery of the Monroe and FCCI policies occurred in RRS' home state of Michigan, Michigan law determines the coverage obligations of Monroe and FCCI, as well as the concomitant subrogation rights of U.S. Fire and Interstate standing in the shoes of RRS. The Georgia Court of Appeals so held in this coverage litigation. See Nuvell Nat'l Auto Fin., LLC, 736 S.E.2d at 468 ("We find, as did the trial court, that, since the policy was issued and delivered in Michigan, Michigan substantive law applies to interpretation of the policy.") Michigan law also governs any available penalties for nonpayment of insurance benefits under the Monroe and FCCI policies. See Pinkerton & Laws, Inc. v. Royal Ins. Co. of Am., 227 F. Supp. 2d 1348, 1357 (N.D. Ga. 2002) (finding Georgia bad faith penalties do not apply to contract governed by Florida law).

A thornier issue not discussed by the parties, however, is what state law determines the priority and allocation of coverage between the two groups of insurers. Michigan law might also apply to the U.S Fire and Interstate policies since Renovo appears to have been headquartered there when the U.S. Fire and Interstate policies incepted. (Doc. 43-3, p. 1.) If Michigan law does not govern the U.S. Fire and Interstate policies, such that the two sets of policies are governed by the laws of different states, a related question arises concerning what state law governs priority and allocation between the two groups of insurers. As explained in § III.H, *infra*, the parties will need to address these issues in renewed summary judgment motions.

### B. The Complaint Gives Fair Notice Of Plaintiffs' Intention To Seek Reimbursement As Subrogees, And Defendants' Related Procedural Objections Also Fail.

Defendants contend a number of procedural hurdles defeat Plaintiffs' claims. First, they take issue with the manner in which Plaintiffs cast their claims for reimbursement. The amended complaint notifies Defendants that U.S. Fire and Interstate are seeking reimbursement as subrogees of RRS because they paid in full the *Clements* settlement and *Jacobs* judgment. See Fed. R. Civ. P. 8(a). Indeed, subrogation is the only remedy that allows U.S. Fire and Interstate to step into the

9

shoes of RRS under the insurance contracts and assert claims for breach of contract. See, e.g., Fed. Kemper Ins. Co. v. Isaacson, 377 N.W.2d 379, 381 (Mich. Ct. App. 1985) ("As subrogee, plaintiff stands in the shoes of the subrogor and acquires no greater rights than those possessed by the subrogor.").

Defendants contend the complaint fails to state a claim because it never expressly uses the labels subrogee or subrogation. (See doc. 40-3, p. 5.) Under Michigan law, a complaint need not mention the term subrogation to state a claim under such a theory. See Fed. Kemper Ins. Co. v. W. Ins. Companies, 293 N.W.2d 765, 767 (Mich. Ct. App. 1980).("Although plaintiffs in their complaint did not mention the term 'subrogation,' they pleaded sufficient facts to state a claim for subrogation as the complaint reasonably informed defendant of the nature of the cause it must defend."). In addition, there can be no question that Michigan law allows this type of subrogation claim for reimbursement. Id.; see also Auto Club Ins. Ass'n v. New York Life Ins. Co., 485 N.W.2d 695, 698 (Mich. 1992) (allowing claim under theory of subrogation by auto insurer against medical insurer for medical bills paid). Because Plaintiffs' claim is one for subrogation, Defendants' related argument that Plaintiffs have no standing to assert a

claim for indemnity is irrelevant.

Both parties apply Georgia law when discussing the subrogation issue even though they agree Michigan law governs this coverage dispute. Even if Georgia law did apply, the analysis would not differ. See, e.g., Nat'l Union Fire Ins. Co. v. Am. Motorists Ins. Co., 504 S.E.2d 673, 674 (Ga. 1998) ("As an initial matter, the labeling of National Union's claim as a denial of coverage is a mischaracterization. Courts have long recognized, either as subrogation or indemnity, the right of an insurance company, which pays a claim, to seek reimbursement from another insurer that should have satisfied the claim.").

Second, Defendants assert that Plaintiffs do not have standing to sue on behalf of Nuvell. (See doc. 40-3, p. 5.) Defendants fail to acknowledge that RRS is liable for Nuvell's portion of liability under their indemnity agreement, and Monroe is obligated to cover this liability assumed by RRS, as so ruled by the Georgia Court of Appeals. Nuvell Nat'l Auto Fin., LLC, 736 S.E.2d at 471.

Finally, Defendants argue the Columbia County Superior Court improperly joined U.S. Fire and Interstate as parties at too late of a stage in the litigation. (Doc. 40-3, p. 6.) Defendants advance no argument other than apparently this was later than their liking. The argument is without merit. U.S.

Fire and Interstate have been parties to this insurance dispute since January 31, 2014, and Defendants have had more than sufficient notice and time to prepare for summary judgment. (Doc. 1-6, p. 3.)

### C. Defendants Cannot Avoid Coverage Obligations By Collaterally Attacking The State Court Verdict For Lack Of Fault Appointment.

The linchpin of Defendants' argument is that, because the jury in *Jacobs* did not apportion the verdict in purported violation of O.C.G.A § 51-12-33, the verdict must be treated as a nullity until fault is apportioned among the four defendants. (Doc. 40-3, pp. 6-11.) Enforcing the joint and several verdict in the absence of apportionment would, Defendants contend, violate Georgia law and public policy. (Id.) O.C.G.A § 51-12-33(b) provides as follows:

> Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

Joint tortfeasors are thus liable only for their percentage of fault, but only when the trier of fact apportions the verdict.

See O.C.G.A § 51-12-33(b). Use of the word "shall" means apportionment is mandatory for joint tortfeasors.

The parties disagree whether § 51-12-33 applies to *Jacobs* because they disagree regarding the type of liability admitted in *Jacobs*. Defendants claim only negligence, while Plaintiffs claim liability is vicarious for Mr. Brown's breach of Georgia's wrongful repossession statute, O.C.G.A. § 11-9-609. (Doc. 1-5, pp. 44-46.) For Plaintiffs, this removes *Jacobs* from the apportionment mandate applicable to tort actions in § 51-12-33(b). See <u>PN Exp., Inc. v. Zegel</u>, 697 S.E.2d 226, 233 (Ga. Ct. App. 2010).

Plaintiffs are correct that apportionment is not permitted where a defendant's liability is solely vicarious. <u>Id.</u> Georgia law imposes vicarious liability upon independent contractors like RRS and Renovo under § 11-9-609 for breaches of the peace during a repossession. See <u>Fulton v. Anchor Sav. Bank, FSB</u>, 452 S.E.2d 208, 214 (Ga. Ct. App. 1994) (stating entity assigned repossession liable if independent contractor breaches peace during repossession). The pre-trial order in *Jacobs* muddles the issue rather than clarifying it by referencing liability for negligence and wrongful repossession without specifying the nature of liability admitted by the defendants. (Doc. 1-5, pp. 44-46.)

Monroe and FCCI argue the Court should find § 51-12-33 required apportionment of fault, treat the judgment as a nullity, and hold a jury trial to apportion damages among the four defendants in *Jacobs*. (See doc. 40-3, pp. 18.) This Court lacks the authority to declare the Georgia judgment a nullity and must instead honor the judgment's imposition of joint and several liability. Pursuant to 28 U.S.C. § 1738, this Court must give the same preclusive effect to the *Jacobs* judgment as a Georgia court would. Kremer v. Chem. Const. Corp., 456 U.S. 461, 466 (1982) ("Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.").

Under Georgia law, a judgment not void on its face is subject to attack only by a direct proceeding in the court in which it was rendered. State Auto Mut. Ins. Co. v. Relocation & Corp. Hous. Servs., Inc., 651 S.E.2d 829, 832 (Ga. Ct. App. 2007). A judgment is only facially void if the court lacked personal or subject matter jurisdiction. Id. at n.4. Further, a judgment of a court having jurisdiction of the parties and the subject matter, however erroneous or irregular, is binding until set aside. Id. at 832. Thus, the judgment in *Jacobs* is binding.

14

Monroe and FCCI argue that satisfying their contractual obligation of indemnification would violate Georgia public policy as embodied in the fault apportionment scheme by requiring them to pay more than the share of fault attributable to RRS and Renovo. (Doc. 40-3, p. 7.) Defendants cite much case law supporting Georgia's apportionment scheme, but none suggesting an insurer can rightfully refuse to indemnify an insured when a verdict is not apportioned.

Under Georgia law, a contractual obligation will not be "avoided by the courts as against public policy, except where the case is free from doubt and an injury to the public clearly appears." Emory Univ. v. Porubiansky, 282 S.E.2d 903, 904 (Ga. 1981) (internal quotations omitted). There is no injury to the public alleged by Defendants. If anything, it would violate public policy to allow an insurer to escape its indemnity obligation by mounting an indirect attack in federal court on a facially valid state court judgment. This is especially so where, as here, the insurer complaining about the state court judgment denied its duty to defend and thus chose to forego any say in the very process it now seeks to attack.

Defendants also argue joint and several liability retroactively interferes with their contractual indemnity obligation because they only contracted with RRS to pay its

15

percentage of fault. (Doc. 40-3, p. 10.) Nothing in their policies, however, provides they will only be liable for RRS' proportionate share of fault, or excludes coverage for joint and several verdicts. Rather, the Monroe policy broadly obligates Monroe to "pay all sums an 'insured' legally must pay as damages because of 'bodily injury.'" (See Monroe Policy, Section II.A, cl. 1, doc. 1-7, p. 60.) In *Jacobs*, RRS became legally obligated to pay the entire verdict.

### D. Georgia Law Still Recognizes A Claim For Contribution Where, As Here, The Jury Verdict Imposes Joint And Several Liability.

Defendants' second argument, closely related to its first, is that RRS has been discharged from liability because contribution no longer exists and U.S. Fire and Interstate fully paid the judgment. (Doc. 40-3, pp. 11-12.) Because the judgment has been fully satisfied, Defendants argue, RRS is not liable and there are no damages resulting from Monroe or FCCI's breach of contract. (See id.) This argument relies on the purported abolition of contribution by O.C.G.A. § 51-12-33 as part of implementing the fault apportionment scheme. (See id.)

O.C.G.A. § 51-12-33(b) provides the following in relation to the right of contribution:

> Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a

16

> joint liability among the persons liable, and shall
> not be subject to any right of contribution.

This plain language dictates that only "damages apportioned by the trier of fact" shall not be subject to the right of contribution, tying contribution to apportionment and directly refuting Defendants' contention that contribution has been completely abolished. See Zurich Am. Ins. Co. v. Heard, 740 S.E.2d 429, 433 (Ga. Ct. App. 2013) ("Based upon the plain language of this statute, the right of contribution between joint tortfeasors has not been completely abolished by the legislature's enactment of OCGA § 51-12-33(b).").

Defendants also ignore O.C.G.A. § 51-12-32(a), which provides for contribution except when the trier of fact apportions fault pursuant to O.C.G.A. § 51-12-33. O.C.G.A. § 51-12-32(b) further provides that "[i]f judgment is entered jointly against several trespassers and is paid off by one of them, the others shall be liable to him for contribution."

One must also keep in mind Plaintiffs are not seeking contribution from joint tortfeasors. Rather, they assert claims for reimbursement as subrogees. Michigan law allows insurers to seek reimbursement from other insurers that have not paid their share of a judgment. See Allstate Ins. Co. v. Citizens Ins. Co. of Am., 325 N.W.2d 505, 509 (Mich. Ct. App. 1982) (stating

17

preferred method of settling priority among insurers is for one to pay claim and sue other in subrogation).

Defendants further argue U.S. Fire and Interstate acted as volunteers in paying the entire judgment, which they could have prevented by seeking apportionment at trial. (Doc. 55, p. 10.) U.S. Fire and Interstate paid a joint and several verdict imposed against their insured in satisfaction of their policy obligations, which by no means can be construed as voluntary. The argument also presumes the Georgia verdict and judgment is null and void, which this Court lacks the authority to declare as explained in § III.C, *supra*.

Finally, Defendants argue Interstate acted as a volunteer, and is thus not entitled to reimbursement in subrogation, because its "other insurance" clause relegated Interstate's indemnity obligation as secondary behind the indemnity obligations of Defendants. (See doc. 49, p. 11.) This provision of the Interstate policy provides, in pertinent part, as follows: "If there is any 'other insurance' available to any 'insured' the insurance provided by this policy will apply in excess of all 'other insurance' and shall not contribute with such 'other insurance.'" (Interstate Policy, doc. 43-4, p. 29.) Defendants forget, however, that its insurance was not "available" because at the time Interstate satisfied the

judgment, the Superior Court had decided that the Monroe policy did not afford coverage and the Georgia Court of Appeals had not yet reversed that decision.

Further, Michigan law holds that "when an insurance provider pays expenses on behalf of its insured, it is not doing so as a volunteer . . . [t]his is true even if the insurer's obligation was only secondary to another carrier's, so that it would not have been liable to pay benefits until the policy limits of the primary carrier were exhausted." Eller v. Metro Indus. Contracting, Inc., 683 N.W.2d 242, 246 (Mich. Ct. App. 2004) (internal quotations omitted). The Georgia Court of Appeals decision cited by Defendants, Allianz Ins. Co. v. State Farm Fire & Cas. Co., 449 S.E. 2d. 5, 6 (Ga. Ct. App. 1994), is irrelevant because Michigan law applies and Allianz concerns an exclusion disclaiming coverage rather than an "other insurance" clause setting priority.

E.    The FCCI Policy Covers *Jacobs*.

FCCI contends due process prevents it from being bound by the decision of the Georgia Court of Appeals, which found the tow truck to be a covered "unowned auto" under the Monroe primary policy for which the FCCI policy provides excess coverage. (Doc. 40-3, pp. 12-13.) FCCI is not bound by the appellate ruling since it was not a party to the state

litigation at that time. But in this Court, Plaintiffs have moved for a summary judgment ruling that the FCCI policy covers *Jacobs*, and FCCI has offered no argument to the contrary. (Doc. 42-1; doc. 49, p. 10.) When one compares the undisputed facts with the FCCI policy, the inescapable conclusion is the FCCI policy covers *Jacobs* to the extent liability exceeds the $1 million Monroe policy limit.

The FCCI policy pays for "ultimate net loss" due to "bodily injury" in excess of the "retained limit," the latter of which is defined as the available limits of underlying insurance. (Doc. 1-8, p. 33.) The Monroe policy qualifies as "underlying insurance" because the FCCI policy names it in the schedule of underlying insurance. (Doc. 1-7, p. 137; doc. 1-8, p. 34.) The FCCI policy provides coverage for "liability arising out of the ownership, maintenance, or use of 'covered autos'" and the term "covered autos" includes any auto covered by the Monroe policy as underlying insurance. (Doc. 1-8, pp. 24, 29) The Georgia Court of Appeals held the tow truck is a covered "unowned auto" under the Monroe policy as to RRS, and that the Monroe policy provides primary coverage to RRS for its own liability in *Jacobs* and the liability it assumed on behalf of Nuvell. 736 S.E.2d at 468. FCCI thus provides excess coverage for *Jacobs*.

**F.  Monroe Is Entitled To Summary Judgment On Plaintiffs'
Georgia Bad Faith Claim But Not On Plaintiffs' Claim
For An Interest Penalty Under Michigan Law.**

Monroe argues Plaintiffs have no valid bad faith claim
under O.C.G.A. § 33-4-6 because the Columbia County Superior
Court already dismissed the claim at summary judgment and
Plaintiffs failed to appeal this ruling.  (Doc. 40-3, pp. 13-
14.)  Plaintiffs argue this claim remains pending because (1)
the Superior Court summarily dismissed the bad faith claim based
solely on its erroneous finding of no coverage under the Monroe
policy; and (2) the Georgia Court of Appeals implicitly revived
the bad faith claim when it overturned the summary judgment
ruling as to no coverage.  (Doc. 45, p. 9.)  There are two
reasons Plaintiffs have no bad faith claim under § 33-4-6.

First, while the amended complaint asserted a bad faith
claim under § 33-4-6 and alternatively under Michigan law,
Plaintiffs now concede in their response brief they have no bad
faith claim under § 33-4-6 because Michigan law applies.  (Pls.'
Resp. Br., doc. 45, p. 9).  Plaintiffs are correct.  See
Pinkerton & Laws, Inc. v. Royal Ins. Co. of Am., 227 F. Supp. 2d
1348, 1357 (N.D. Ga. 2002) (holding O.C.G.A § 33-4-6
inapplicable to insurance policy governed by Florida law); Deep
Sea Fin., LLC v. British Marine Luxembourg, S.A., No. CV 409-
022, 2010 WL 3463591, at *7 (S.D. Ga. Sept. 1, 2010) (same

21

holding as to insurance policy governed by Mexican law).

Second, although the Superior Court granted summary judgment on the bad faith claim based solely on its erroneous determination of no coverage, Plaintiffs' failure to appeal this ruling itself is fatal to their bad faith claim under § 33-4-6. (See doc. 40-1, pp. 58-59.) Contrary to Plaintiffs' contention, Georgia appellate courts do not overturn trial court rulings by implication, and grounds not raised on appeal result in affirmance. Med. Ctr. of Cent. Georgia, Inc. v. City of Macon, 757 S.E.2d 207, 210 (Ga. Ct. App. 2014).

Nonetheless, Plaintiffs' alternative bad faith claim under Michigan law remains pending. In an attempt to undermine this claim, Monroe asserts that "laws of other states have no force and effect in Georgia." (Doc. 40-3, p. 16.) This statement ignores that Georgia courts regularly apply other states' contract laws under the rule of *lex loci contractus*. See Calhoun v. Cullum's Lumber Mill, Inc., 545 S.E.2d 41, 44 (Ga. Ct. App. 2001). Indeed, the Georgia Court of Appeals correctly held that Michigan law governs this dispute between Plaintiffs and Monroe. Nuvell Nat'l Auto Fin., LLC, 736 S.E.2d at 468.

Defendants argue Plaintiffs cannot recover interest under M.C.L. § 500.2006 because they cannot show Defendants acted in bad faith. Neither Defendants nor Plaintiffs discuss,

22

however, whether Plaintiffs are entitled to the automatic recovery of interest under § 500.2006 without a showing of bad faith. Because the Court finds Plaintiffs are entitled to automatic interest, Defendants' summary judgment arguments concerning the absence of bad faith are irrelevant.

With respect to an insurer's untimely payment of claims, § 500.2006(4) provides, in pertinent part, as follows:

> (4) If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. If the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law. . . . .

The twelve percent interest penalty applies automatically, without consideration of bad faith, when (1) the claimant is the insured or an entity directly entitled to insurance benefits; and (2) benefits are not paid within sixty days after receipt by the insurer of satisfactory proof of loss. Griswold Properties, L.L.C. v. Lexington Ins. Co., 741 N.W.2d 549, 557 (Mich. Ct. App. 2007). If the claimant is a

third party tort claimant, the interest penalty does not apply in the absence of a showing the insurer has acted in bad faith M.C.L. § 500.2006(4).

Because a subrogee stands in the shoes of the insured and is entitled to the same rights as the insured, a subrogee has the same rights as the insured to recover interest under § 500.2006. See Utica Mut. Ins. Co. v. Hastings Mut. Ins. Co., No. 281441, 2009 WL 2605407, at *7 and n.2. (Mich. Ct. App. Aug. 25, 2009)(awarding automatic interest penalty to subrogee insurer and recognizing subrogee is entitled to pursue all rights held by insured).

Had they discussed the issue, Defendants would have likely argued § 500.2006 does not permit automatic interest and instead requires a showing of bad faith where, as here, the insurance claim arises out of defending and settling an underlying tort claim. This is because the original claimant, Pamela Jacobs, is a third party tort claimant, and § 500.2006 requires a showing of bad faith "[i]f the claimant is a third party tort claimant."

There is a good faith argument to this effect under Auto-Owners Ins. Co. v. Ferwerda Enterprises, Inc., 797 N.W. 2d 168, 175 (Mich. Ct. App. 2010) judgment vacated in part,

appeal denied in part sub nom. Auto-Owners Ins. Co. v. Ferwerda Enterprises, Inc., 784 N.W.2d 44 (Mich. 2010), and vacated sub nom. Auto-Owners Ins. Co. v. Ferwerda Enterprises, Inc., 789 N.W.2d 491 (Mich. 2010), which held that a showing of bad faith is required when the insured's claim is "specifically tied to the underlying third-party tort claim." After careful consideration of Ferwerda and its progeny, this Court holds Plaintiffs are entitled to automatic interest under § 500.2006 without a showing of bad faith for the same reasons explained by the Western District of Michigan and the U.S. Court of Appeals for the Sixth Circuit in Stryker Corp. v. XL Ins. Am. Inc., 726 F. Supp. 2d 754, 767 (W.D. Mich. 2010) and Stryker Corp. v. XL Ins. Am., 735 F.3d 349, 361 (6th Cir. 2012).

In Stryker, the insured manufacturer settled consumer claims alleging defective prosthetic knee replacements and sought coverage from its commercial general liability insurer. After finding coverage, the District Court held the insured was entitled to automatic interest from the date it settled a claim and thus it was converted for the purpose of § 500.2006 from a third party tort claim into a first-party claim by the

insured. See _Stryker Corp. v. XL Ins. Am. Inc._, 726 F. Supp. 2d 754, 767 (W.D. Mich. 2010).

Carefully dissecting _Ferwerda_, as well as the language and purpose of § 500.2006, the District Court explained that (1) the statute imposes automatic interest whenever an insurer wrongfully denies payment to an insured, without regard to whether the claim is for first party or liability coverage; and (2) the statute requires a showing of bad faith for third party tort claimants because an insurer is subject to lesser expectations regarding performance and payment when dealing with adverse third parties rather than its own insureds. _Stryker_, 726 F. Supp. 2d at 766-67.

Automatic interest applies from the moment an insured settles a third party tort claim because "the third party's loss is transferred to the insured" and the "contracting party" is now "suffering the consequences of the insurer's continuing delay." Id. at 767. Critically, this transfer never occurred in _Ferwerda_, the District Court explained, because the insurer had not yet paid the underlying tort claim, and thus in effect sought recovery of the interest penalty on behalf of the third party tort claimant. Id.

The Sixth Circuit in _Stryker_ affirmed, finding the District Court's holding to be "logical" and "consistent with the statutory language—as long as the 'claimant' is a third-party, the 'reasonable dispute' rule applies; the moment the 'claimant' becomes the insured, it ceases to apply." _Stryker_, 735 F.3d at 361. The Sixth Circuit also agreed with the District Court's treatment of _Ferwerda_, and found considerable doubt as to its precedential value given the Michigan Supreme Court's reversal on other grounds in _Ferwerda II_, 784 N.W.2d 44 (Mich. 2010).

The Sixth Circuit rejected the insurer's argument that "all claims stemming ultimately from third party tort actions are always subject to the reasonable dispute rule." Instead, the Sixth Circuit held that "the plain language of the statute focuses on the identity of the claimant who is seeking benefits from the insurer, not the underlying source of the claim." Id. at 360-61. Notably, the Sixth Circuit also held that "attorney's fees stemming from an insurer's breach of the duty to defend were subject to penalty interest . . ., including any defense costs and consequential damages." _Id._ at 361.

Defendants would likely counter Stryker by citing Nickola v. MIC Gen. Ins. Co. 878 N.W.2d 480, 485 (Mich. Ct. App. 2015), a recent decision by the Michigan Court of Appeals considering § 500.2006 in the unique context of a claim for underinsured motorist coverage. The insured demanded automatic interest, contending his claim qualified as one brought by an insured because he was seeking coverage under his own auto policy. Id. at 485. The court found the claim more properly characterized as one asserted by a third party tort claimant because an insured seeking underinsured motorist coverage "has to allege a third party tort claim against his own insurer," and the insurer "stands in the shoes of the alleged tortfeasor . . . ." Id. at 487. It is self-evident that Nickola is materially distinguishable given its unique context. It does not apply where, as here, the insured is not asserting a tort claim but is instead demanding coverage from its insurer for tort claims already defended, adjudicated by a jury, and fully paid.

For these reasons, the Court concurs with the Sixth Circuit's prediction that the Michigan Supreme Court would find the automatic interest provision of § 500.2006 applicable to an insured's claim against its liability insurer for

defense and indemnity coverage of claims the insured has defended and paid. Defendants' summary judgment arguments as to why their conduct does not constitute bad faith under § 500.20036 are thus irrelevant.

### G. Plaintiffs Are Not Entitled to Attorneys' Fees Under O.C.G.A. § 13-6-11 or O.C.G.A. § 9-15-14.

Plaintiffs concede in their response brief that O.C.G.A. § 9-15-14 "is not applicable in federal court." (Doc. 45, p. 10.) They are correct that § 9-15-14 is unavailable to civil litigants in federal courts, and Defendants are entitled to summary judgment as to Plaintiffs' claim under this code section. Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).

However, O.C.G.A. § 13-6-11 is substantive and applicable in federal court under Erie. McMahan v. Toto, 256 F.3d 1120, 1132 (11th Cir. 2001), amended on reh'g, 311 F.3d 1077 (11th Cir. 2002) ("It is clear that statutes allowing for recovery of attorney's fees are substantive for Erie purposes.") Further, Georgia courts would apply § 13-6-11 as a remedial measure under the rule of lex fori even though Michigan law governs the substance of the contract. See Coca-Cola Bottlers' Sales & Servs. Co. LLC v. Novelis Corp., 715 S.E.2d 692, 697 (Ga. Ct. App. 2011) (applying § 13-6-11 to contract governed by New York

law); <u>Wells Fargo Bank, N.A. v. Lincoln Ben. Life Co.</u>, No. 1:13-CV-2890-TWT, 2014 WL 5382551, at *2 (N.D. Ga. Oct. 22, 2014) (contrasting §13-6-11 with § 33-4-6).

Section 13-6-11 provides as follows:

The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them.

This code section concerns conduct arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself. <u>David G. Brown, P.E., Inc. v. Kent</u>, 561 S.E.2d 89, 90 (Ga. 2002). Plaintiffs claim Monroe's conduct became wholly unjustified in November 2012, when it continued to disclaim liability even after the decision by the Georgia Court of Appeals. (<u>See</u> doc. 45, p. 10.) Because this claim relates solely to conduct occurring during the litigation, it is outside the scope of § 13-6-11.

Plaintiffs do not argue Monroe's pre-suit denial of coverage involved bad faith. Even if they had, Plaintiffs would not have a claim under § 13-6-11 because the denial was grounded in a construction of the insurance policy adopted by the trial court and rejected only on appeal. To determine whether Monroe was "stubbornly litigious" or "caused unnecessary trouble and

expense," the Court asks whether there existed a bona fide controversy as to coverage, defined as a genuine dispute in law or fact as to liability or damages. Horton v. Dennis, 750 S.E.2d. 493, 497 (Ga. Ct. App. 2013). Because Monroe prevailed in the trial court at summary judgment based on its arguments of no coverage, no reasonable juror could find Monroe's arguments were not bona fide. See Scully v. 1st Magnolia Homes, Inc., 619 S.E.2d. 392, 393-94 (Ga. Ct. App. 2005) (finding bona fide controversy where trial court granted summary judgment for insurer but Georgia Supreme Court reversed).

For these reasons, Monroe is entitled to summary judgment on Plaintiffs' claims for attorneys' fees under both § 13-6-11 and § 9-15-14.

## H. Unresolved Questions Preclude Summary Judgment Concerning Indemnity Allocation.

Plaintiffs argue the primary carriers Monroe and U.S. Fire should contribute equally their full policy limits of $1 million, and excess insurers Interstate and FCCI should split the remainder equally. (Doc. 42-1, p. 10.) The argument appears to be based on Plaintiffs' concept of fairness, with scant citation of authority and no consideration of legal issues such as the following:

> 1. Which state's law governs the U.S. Fire and Interstate policies delivered to Renovo? If Michigan law applies

to the Monroe and FCCI policies but not the U.S. Fire and Interstate policies, which state's law determines priority and allocation between the two sets of policies?

2. Under applicable state law, what are the factors that determine priority and allocation among multiple policies and insureds? Is the allocation method a simple, equal division of the indemnity amount based purely on the number of insurers, or does it consider other factors such as respective policy limits, deductibles/self-insured retentions, and number of insureds?

3. Under applicable state law, what is the effect of the "other insurance" provisions, and how are any conflicts reconciled?

Issues such as these are critical. For example, there are at least three provisions in the Monroe policy alone that may affect the priority of coverage between Monroe and U.S. Fire. First, the indemnity agreement between Nuvell and RRS may trigger the following provision: "Regardless of the provisions of Paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an 'insured contract.'" (Monroe Policy, doc. 1-7, p. 67.)

Second, primary coverage may be unavailable to RRS because the Monroe policy provides as follows: "For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance . . . ." (Id.) Renovo owned the tow truck, not RRS, which is why the Georgia Court of Appeals held the tow truck was a covered "unowned auto"

32

with respect to RRS.

Third, overlapping coverage with U.S. Fire may trigger the following provision in the Monroe policy:

> When this Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

(Id.)

Ignoring these important issues, Defendants point out that Nuvell also has an insurance policy that may cover the tow truck incident. (Doc. 49, pp. 10-11.) However, Nuvell's carrier is irrelevant because no one has sought coverage from it and Nuvell's liability has been shifted to RRS through the indemnity agreement.

For these reasons, as to the topic of indemnity allocation, the Court **DENIES** Plaintiffs' summary judgment motion **WITH THE RIGHT TO REFILE** within sixty days of the date of this Order.

I. **Defense Cost Allocation and Reimbursement Is Impossible to Determine On the Current Record.**

U.S. Fire claims Monroe must reimburse half of the costs incurred to defend RRS and Nuvell in *Clements* and *Jacobs*. (Doc. 43-1, p. 8.) In their original summary judgment motion, U.S. Fire sought a total of $195,571.95 in defense costs from Monroe, itemized as $78,000 to defend Nuvell and half of $235,143

33

expended on the joint defense of Renovo and RRS. (Doc. 43-15, p. 2.) Along with its motion for summary judgment, U.S. Fire submitted a summary of the defense costs incurred by month and supplemental discovery responses showing every billing entry made by U.S. Fire's counsel in this litigation and the underlying litigation. (See docs. 43-10, 43-14.)

By affidavit submitted more than one month later, U.S. Fire claims a right to reimbursement of $199,024.00, itemized as follows: (1) $33,158.50 solely attributable to defending RRS; (2) half of $159,335.00 in attorneys' fees and $16,396,73 in costs incurred to jointly defend Renovo and RRS; (3) $78,000 Nuvell incurred to prosecute the indemnity action against RRS, for which U.S. Fire reimbursed Nuvell. U.S. Fire seeks both the costs incurred to defend RRS against the Nuvell indemnity claims and Nuvell's costs for prosecuting the indemnity claims, under the theory that Monroe's coverage denial caused RRS to breach its indemnity obligations. (See doc. 57, p. 10.)

Monroe concedes it must reimburse U.S. Fire, but argues only fifty percent of RRS' defense costs should be allocated to it because U.S. Fire also had a duty to defend RRS. Monroe contends that it owes nothing in regard to Nuvell's defense costs, or in the alternative, that it only owes half of the costs since U.S. Fire also had a duty to defend. (Defs.' Resp.

Br., doc. 49, p. 6.) Monroe also argues Plaintiffs' calculation of RRS defense costs is inflated because it includes costs for (1) work performed in 2010, before RRS became a party to the state litigation in March 2011; (2) defense of *Clements*; (3) defense of RRS against Nuvell's third-party indemnification claim; and (4) prosecution of the current claims for insurance coverage. (<u>See</u> <u>id.</u>)

The arguments on these issues are far too generalized. The parties do not discuss choice of law or allocation methodology under applicable state law, including whether allocation is affected by the number of insureds entitled to a defense under the competing policies. Plaintiffs have not specified the billing entries included in its calculation, and Defendants have not specified which of these billing entries it contests. Plaintiffs recognize these shortcomings and request a hearing or permission to brief the defense cost issues informally by letter.

The parties should seek summary judgment in the proper format, i.e. renewed summary judgment motions filed within sixty days of the date of this Order. Because the Court is reserving a ruling on the issue of defense costs, the Court **DENIES AS MOOT** Defendants' motion to strike the untimely affidavit of Stephanie Collings Patel. (Doc. 60.)

## IV.  CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants'
motion for partial summary judgment (doc. 40).  The Court **DENIES**
the motion with respect to Defendants' procedural objections and
collateral attacks on the *Jacobs* verdict, which do not spare them
from their coverage obligations.  Because the Michigan statutory
penalty of twelve percent interest applies automatically, the
Court **DENIES** Defendants' motion to the extent it argues there is
no right to the penalty because Defendants' conduct did not
constitute bad faith.  The Court **GRANTS** Defendants' motion as to
Plaintiffs' claims for attorneys' fees and interest under Georgia
law because § 9-15-14 does not apply in federal court, § 33-4-6
does not apply since Michigan law governs the Monroe and FCCI
policies, and there is no factual basis for recovery under § 13-
6-11.

The Court **GRANTS IN PART** Plaintiffs' first motion for summary
judgment with respect to coverage under the FCCI Policy, which
indemnifies RRS for *Jacobs* in excess of the Monroe primary policy.
(Doc. 42).  The Court **DENIES WITH THE RIGHT TO REFILE** Plaintiffs'
first motion for summary judgment to the extent it seeks $489,
397.08 from FCCI due to the outstanding priority and allocation
issues.  (Id.)  The Court also **DENIES WITH THE RIGHT TO REFILE**
Plaintiffs' second motion for summary judgment concerning the

priority of coverage and allocation of defense and indemnity costs between the insurers. (Doc. 43.) The parties may file renewed motions for summary judgment concerning these issues within sixty days of the date of this Order.

SO ORDERED this 12th day of July, 2016, at Augusta, Georgia.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA